**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

<table>
<tr><td>

AMERICAN ASSOCIATION OF
COSMETOLOGY SCHOOLS *et al.*,

*Plaintiffs*,

v.

UNITED STATES DEPARTMENT OF
EDUCATION, *et al.*,

*Defendants*.

</td><td>

No. 4:23-cv-01267-O

</td></tr>
</table>

**MOTION TO STRIKE**

Defendants the U.S. Department of Education (the "Department") and Miguel Cardona in his official capacity as Secretary of Education (collectively, "Defendants") respectfully move to strike material that was not part of the administrative record of this Administrative Procedure Act ("APA") case from the docket and exclude it from the Court's consideration at summary judgment. Plaintiffs American Association of Cosmetology Schools ("AACS") and one of its members (collectively, "AACS") improperly included such material in their Appendix in support of their Motion for Summary Judgment.

**RELEVANT BACKGROUND**

On December 22, 2023, AACS, the original plaintiff in this case, filed suit under the APA to challenge aspects of Final Regulations, 88 Fed. Reg. 70004 (Oct. 10, 2023), issued by Defendant the U.S. Department of Education (the "Department"). *See* AACS Compl. [ECF 1] ¶¶ 162-207 (asserting three counts pursuant to various subsections of 5 U.S.C. § 706(2)). Pursuant to the parties' agreement, Defendants filed the Administrative Record for the Final Regulations on April

30, 2024, together with the Department's Certification that the Administrative Record it had compiled was "a true, correct, and complete copy of the non-privileged documents that were directly or indirectly considered when promulgating these rules, other than readily available legal authorities." *See* Defendants' Notice & Certification at 1 [ECF 16, 16-1].

The Court then issued a summary judgment briefing schedule, and pursuant to that schedule, AACS filed its Motion for Summary Judgment on September 13, 2024. AACS Mot. [ECF 28]. Pursuant to Local Rule 56.6, AACS also filed a 1657-page Appendix. [ECF 30.] Many items listed in the Table of Contents ("TOC") for the Appendix are excerpted from the Administrative Record and include the associated Administrative Record citations. *See* AACS App. TOC Exs. 1-36. AACS also included prior Department Final Regulations, *id.* Exs. 37-38; publicly available material from the Department's Federal Student Aid Handbook, *id.* Ex. Nos. 40-41; and declarations presumably submitted to support AACS's standing, Exs. 43-44.

AACS's Appendix also includes three items that are not from the Administrative Record, other publicly-available Department material, or solely related to AACS's standing, but are cited in its brief to support its argument that various aspects of the Final Regulations are arbitrary and capricious: (1) Exhibit 45, a purported expert declaration of "P. Hill," AACS App. 1613-44; (2) Exhibit 42, an Associated Press news article, AACS App. 1597-99; and (3) Exhibit 39, a U.S. Census Bureau blog post, AACS App. 1539-45. *See id.* TOC Exs. 39, 42, 45. These items should be stricken or excluded from the Court's consideration.[1]

---

[1] Plaintiffs Ogle School Management, LLC and Tricoci University of Beauty Culture, LLC ("Ogle") did not file an Appendix in conjunction with their Motion for Summary Judgment as required by Local Civil Rule 56.6. However, their memorandum in support of summary judgment cites numerous items, including newspaper articles and reports from private organizations and other agencies, while failing to identify whether the material is part of the AR or move for leave to introduce extra-record material. *See* ECF 32 at vii-viii. The same principles described herein apply, to the extent Ogle relies on extra-record material for its claims under 5 U.S.C. § 706(2)(A).

**ARGUMENT**

In APA cases, summary judgment "serves as the mechanism" for the district court, "functionally operating as an appellate tribunal," to decide, as a matter of law, "whether the [challenged agency] action is supported by the administrative record and otherwise consistent with the APA standard of review." *Nat'l Ass'n for Gun Rts., Inc. v. Garland*, No. 4:23-CV-00830-O, 2024 WL 3517504, at \*14 (N.D. Tex. July 23, 2024) (internal quotation omitted). In doing so, the Court is generally limited to the administrative record. *See id.* at \*15. Indeed, just as plaintiffs may not raise new arguments that were not raised at the administrative stage, *Healthy Gulf v. U.S. Army Corps of Eng'rs*, 81 F.4th 510, 521-22 (5th Cir. 2023); *OnPath Fed. Credit Union v. U.S. Dep't of Treasury*, 73 F.4th 291, 298 (5th Cir. 2023), it is well established that they also may not rely on extra-record material, pursuant to the APA's direction that courts "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. Under that plain language, "[t]he focal point for judicial review" of an administrative agency's action "should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *cf. Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (court must "apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court."). "An agency is entitled to a strong 'presumption of regularity, that it properly designated the administrative record.'" *Monkey Jungle, Inc. v. SBA*, No. 22-cv-2537, 2024 WL 3987016, at \*6–7 (D.D.C. Aug. 29, 2024) (citing *Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin.*, 10 F.4th 869, 878 (D.C. Cir. 2019)).

A party wishing to supplement the administrative record typically files a motion requesting such relief, but such motions "are rarely granted." *OnPath Fed. Credit Union v. U.S. Dep't of*

*Treasury*, 73 F.4th 291, 299 (5th Cir. 2023). The Fifth Circuit has emphasized that supplementation "is not allowed unless the moving party demonstrates 'unusual circumstances justifying a departure' from the general presumption that review is limited to the record compiled by the agency.'" *Id.* (quoting *Medina Cty. Envtl. Action v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010)). And the Fifth Circuit has identified only three situations where such unusual circumstances might be present: "(1) the agency deliberately or negligently excluded documents that may have been adverse to its decision, . . . (2) the district court needed to supplement the record with 'background information' in order to determine whether the agency considered all of the relevant factors, or (3) the agency failed to explain administrative action so as to frustrate judicial review." *Id.* (internal quotation omitted).

Here, although AACS had over four months from the time Defendants filed the Administrative Record until its summary judgment deadline, it failed to seek supplementation of the Record, nor does it invoke any basis for supplementation in its summary judgment brief. Instead, AACS ignores the well-established record rule and freely cites extra-record material without acknowledging it as such.

## I.    Exhibit 45, Hill Declaration

In particular, AACS relies heavily on the Hill Declaration to argue that the Department's statistical analyses, described in detail in the Preamble to the Final Regulations, are flawed and that the Department failed to make certain information available for comment during the rulemaking. *E.g.*, AACS MSJ Mem. [ECF 29] at 34-35. Since the Hill Declaration was signed on September 13, 2024, nearly a year after the Final Regulations were issued and the same date as AACS's summary judgment filing, AACS clearly cannot maintain that the Hill Declaration was submitted during the rulemaking comment period and was before the Department at the time of its

decision. The other two extra-record documents that AACS included in its Appendix likewise post-date the Final Regulations. AACS would need to identify "unusual circumstances" in one of the categories identified above to justify the Court's consideration of this material, but it has failed to do so. The material should be stricken for that reason alone.

Moreover, the material fits in none of the three categories of "unusual circumstances" that the Fifth Circuit has identified. Since all three documents were created after the Final Regulations were issued, they were not deliberately or negligently excluded from the Record by the Department. Nor has the Department failed to explain the decisions that AACS challenges. Rather, the Court has already observed that "the Department engaged in thorough rule making," responding to comments and providing extensive explanations for its decisions. Order of June 20, 2024, at 9, *Ogle Sch. Mgmt., LLC v. U.S. Dep't of Educ.*, No. 4:24-cv-259 [ECF 31].

Nor does the material consist of "background information" necessary "to determine whether the agency considered all of the relevant factors," *OnPath Fed. Credit Union*, 73 F.4th at 299. In its brief, AACS cites *Bakewell v. Stephen F. Austin St. Univ.*, 975 F. Supp. 858, 905 (E.D. Tex. 1996), as support for the notion that the Hill Declaration identified a flaw in the Department's consideration of "multicollinearity" in its regression analysis. AACS MSJ Mem. at 35. However, *Bakewell* was not an APA case; it was an employment discrimination case where the opposing parties each supported the existence or lack of a pattern or practice of discrimination through their own regression analyses—a standard "battle of the experts" in regular civil litigation. *See Bakewell*, 975 F. Supp. at 895.

In APA review, however, the Court has a different role—to determine whether the Department's decision was arbitrary or capricious, while granting "broad discretion" to the Department's "choice of statistical techniques." *Cf. Chem. Mfrs. Ass'n v. EPA*, 885 F.2d 253, 262

(5th Cir. 1989). AACS appears to offer Hill as a post hoc statistical expert, but the Department

provided an initial statistical analysis in its Notice of Proposed Rulemaking ("NPRM"), *see* 88

Fed. Reg. 32300, 32428-33 (May 19, 2023), after similar analyses had been included in prior rules

issued in 2011 and 2014, *see* 76 Fed. Reg. at 34460-66; 79 Fed. Reg. at 16543; 79 Fed. Reg. at

64910. If AACS had wished to critique the Department's statistical analysis, it could and should

have raised such issues in public comments during the rulemaking, but it failed to do so.[2]

      Moreover, Hill describes his specialization "in educational technology strategy and

organizational change management," with a focus on developing "online and hybrid education

strategies." Hill Decl. ¶ 3 & cv at 1 [AACS App. 1614, 1642]. Evidently, Hill's work focuses on

distance learning technology, far afield of the type of analysis described in the Final Regulations.

His curriculum vitae does not identify any peer-reviewed publications involving statistical

analysis, economics, the field of higher education, or any related field. Perhaps as a result, a

Department economist who reviewed Hill's assessments identified numerous omissions and flaws

in Hill's analyses and the conclusions drawn therefrom, along with indications that Hill was simply

unfamiliar with regression analyses of the type described in the Final Regulations. *See* Declaration

of Dr. Rajeev Darolia ¶¶ 8-16. The Department's economist concluded that Hill's critiques of the

Department's regression analyses were wholly unwarranted. *Id.* ¶¶ 9-13.

---

[2] The extensive opportunity for public participation provided by, first, the negotiated rulemaking process, including a series of public hearings, that preceded the Department's issuance of the NPRM, and then, the availability of a comment period following the NPRM's issuance, distinguishes this case from *Nat'l Ass'n for Gun Rights*, 2024 WL 3517504, at *15, where the Court agreed to consider extra-record materials when the agency decision at issue had provided the public with "no role whatsoever in producing or contributing to the administrative record." *See* 88 Fed. Reg. at 32300 (soliciting comments); *id.* at 32316-17 (describing significant public participation that had already occurred during the negotiated rulemaking process).

Moreover, the Final Regulations themselves already addressed the issues that Hill now raises. First, the Department explained that its calculations were estimates based on the data available at the time, so it is not possible to identify with perfect precision how many cosmetology programs might fail the metrics the first year, much less how many might fail the same metric twice within a three-year period, as would be necessary before any program is deemed Title IV ineligible. 88 Fed. Reg. at 70123 (explaining that the data set the Department used for its analysis (the "2022 PPD") "necessarily differs from what will be used to evaluate programs under the final rule in a few ways" because, until additional information is collected pursuant to the Final Regulations, the Department does not have information in the same form that the Regulations contemplate). The Department also explained its disagreement with comments suggesting a widespread negative impact from cosmetology program closures. *Id.* at 70086 (noting "commenters did not consider the large numbers of students attending cosmetology schools but not receiving Federal aid under title IV, HEA, as well as the significant number of cosmetology schools that do not participate in title IV at all," and emphasizing that Title IV grants and loans "are entitlements for students, not institutions of higher education," and that "a student directing their limited title IV, HEA aid to a GE program that does not prepare them for gainful employment in a recognized occupation has lost the opportunity to use those funds to attend a different educational program that would better serve their goals").

Second, the Department addressed its decision to exclude programs with fewer than 30 completers in a cohort period for privacy reasons, but it also explained that it would expand the cohort period from 2 to 4 years when doing so would allow a program to have enough completers for the metrics. *Id.* at 70046. The Department also explained that its revised methodologies would cover programs enrolling approximately 83% of all students. *Id.* at 70127 ("The Department

believes that the coverage of students based on enrollment is sufficiently high to generate substantial net benefits and government budget savings from the policy" and "that the extent to which enrollment is covered by the final rule is the appropriate measure on which to focus coverage analysis on because the benefits, costs, and transfers associated with the policy almost all scale with the number of students (enrollment or completions) rather than the number of programs"). Hill uses a flawed "unweighted" approach to mischaracterize the impact of the Department's decision, and "ignores that the Department *did* consider the performance of programs for which the Department did not have data," though a separate analysis. *See* Darolia Decl. ¶ 16.a.

Third, the Department provided multiple reasons for its conclusion that a program's demographics do not sufficiently influence its outcomes under the metrics to warrant any adjustment. *Id.* at 70031-32. Its regression analysis was one factor that confirmed that altering the metrics in an attempt to compensate for demographic characteristics would not be appropriate because programs and schools play a more important role in determining student outcomes. Hill simply ignores the several other factors that the Department identified, and his quarrel with the Department's regression analyses appears to result from his own misunderstandings. Darolia Decl. ¶¶ 8-13.

Fourth, the Department addressed comments regarding its proposal to calculate earnings thresholds by state and explained why Metropolitan Statistical Areas—Hill's proposed alternative—are not a superior option and in fact have significant drawbacks, which Hill simply ignores. 88 Fed. Reg. at 70055 (explaining why the Department viewed commenters' proposals along these lines as "a flawed approach").

Fifth, the Department addressed the availability of alternative programs. *Id.* at 70145-51. Hill's critique on this point is deeply flawed because he again completely ignores a point the

Department explained in the Final Regulations—the widespread availability of cosmetology programs that do not participate in Title IV at all. *Id.* at 70086. Hill also mischaracterizes the Department's analyses by, for example, failing to mention how the Department measured transfer options in multiple ways and used a variety of methods. Darolia Decl. ¶ 16.b.

In sum, nothing in the Hill Declaration undermines the reasonableness of the Department's conclusions or shows that any aspect of the Department's decision was arbitrary or capricious. Indeed, because the Hill Declaration contributes nothing useful to the Court's consideration, and in particular does not provide "background information" that could assist the Court in determining whether the Department considered relevant factors (and instead often ignores relevant factors itself), it should be stricken or excluded from the Court's consideration.

## II.    Exhibit 42, AP Article

The other extra-record material that AACS submitted similarly fails to provide useful background information. Exhibit 42, the AP article, simply reports on the Department's issuance of the Final Regulations and quotes from various statements, such as that of AACS's executive director, that would be inadmissible hearsay in a non-APA civil case. *See* AACS App. 1597-99. AACS cites the article to support the conclusion that two-thirds of for-profit cosmetology programs will "fail" the GE Rule's metrics. *See* AACS MSJ Mem. at 11 n.7. However, the AP article simply reports on the Department's own preliminary analysis, using incomplete data, that was included in the Preamble. As the Department has explained, those results do not necessarily reflect cosmetology programs' actual outcomes once the Department's revised methodologies are applied to a complete data set. 88 Fed. Reg. at 70123. Moreover, the Department acknowledged in the Preamble that some for-profit cosmetology programs might fail the metrics and thoroughly explained that students in such programs were likely to find more affordable training elsewhere,

including in one of the many cosmetology programs that do not participate in Title IV. *Id.* at 70086.

The AP article does not identify any factor that the Department failed to consider.

### III.    Exhibit 39, U.S. Census Blog Post

Finally, Exhibit 39, the U.S. Census blog post, is entirely irrelevant to AACS's APA

challenge in this case. AACS mis-quotes the blog post by suggesting it addresses data defects in

the American Community Survey ("ACS," the national census). A.Br. at 33 & n.19. It thereby tries

to undermine the Department's use of ACS data for purposes of determining median high school

earnings for the Earnings Premium ("EP") metric. *See id.* But in fact, the statement AACS quotes

does not refer to ACS but to an entirely different survey, the Current Population Survey Annual

Social and Economic Supplement ("CPS ASEC"), which uses a "substantially different" data

collection methodology.[3] In fact, the blog post in Exhibit 39 describes using ACS data (in

conjunction with other sources) as a reference in order to analyze potential defects in the CPS

ASEC data. *See* AACS App. 1551. The Department thoroughly explained in the Final Regulations

why it deems ACS data reliable. See 88 Fed. Reg. at 70058 ("The U.S. Census Bureau has

researched the accuracy of ACS income data and found that income data from the ACS

corresponds well with administratively reported earnings measures."). Exhibit 39 fails to provide

background information or identify any relevant factor that the Department failed to consider in

the Final Regulations. It should also be stricken or disregarded.

### CONCLUSION

For the foregoing reasons, the Court should strike or exclude from consideration AACS's

Exhibits 39, 42, and 45, and all references thereto in its memorandum in support of its summary

judgment motion.

---

[3] https://www.census.gov/topics/income-poverty/poverty/guidance/data-sources/acs-vs-cps.html.

DATED:  November 8, 2024          Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Director, Federal Programs Branch

/s/ Kathryn L. Wyer
KATHRYN L. WYER (DC Bar #90023642)
U.S. Department of Justice, Civil Division
1100 L Street, N.W., Room 12014
Tel. (202) 616-8475
kathryn.wyer@usdoj.gov
*Counsel for Defendants*

## CERTIFICATE OF CONFERENCE

On November 7, 2024, undersigned counsel for Defendants conferred by email with Drew T. Dorner, counsel for Plaintiffs American Association of Cosmetology Schools et al. ("AACS"), copying other counsel for Plaintiffs in this case, regarding Defendants' intention to file a motion to strike material in their Appendix that is not included in the Administrative Record for this case. Mr. Dorner stated AACS's position that they oppose this motion.

/s/ Kathryn L. Wyer
KATHRYN L. WYER (DC Bar #90023642)
U.S. Department of Justice, Civil Division
1100 L Street, N.W., Room 12014
Tel. (202) 616-8475
kathryn.wyer@usdoj.gov
*Counsel for Defendants*
