Exhibit A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN ASSOCIATION OF COSMETOLOGY SCHOOLS ET AL., | § § § | |
| *Plaintiffs*, | § § § | |
| v. | § § § | |
| UNITED STATES DEPARTMENT OF EDUCATION, ET AL.; | § § § | Civil Action No. 4:23-cv-01267-O |
| *Defendants*. | § § § | |

## AMICUS BRIEF OF THE STATE OF KANSAS, MISSOURI, AND SIX OTHER STATES IN SUPPORT OF PLAINTIFFS

# TABLE OF CONTENTS

INTEREST OF AMICI .................................................................................................. 1

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 3

    I.   The HEROES Act Forgiveness Plan ................................................................ 4

       a.  HEROES Forgiveness: DoEd says "waive" means "forgive." ...................... 4

       b.  *Biden v. Nebraska*: The Supreme Court says "waive" does *not* mean "forgive," and DoEd does not have authority to forgive loans. .................................................. 5

    II.   The SAVE Plan: DoEd tries to forgive loans again. ......................................... 6

    III.  The Third Mass Cancelation Attempt: DoEd says "waive" means "forgive." ............... 7

    IV.  DoEd Spites the Taxpayers and Leaves Borrowers in the Lurch ................................ 11

       a.  DoEd tries to stick taxpayers with a bill for hundreds of billions of dollars .............. 11

       b.  Borrowers are left confused and scrambling. ................................................. 13

    V.   DoEd Seeks to Punish Trade Schools ............................................................ 15

CONCLUSION ........................................................................................................... 18

# TABLE OF AUTORITIES

## Cases

*Alaska v. United States Dep't of Educ.*, No. 24-1057-DDC-ADM, 2024 WL 3104578 (D. Kan. June 24, 2024) ............................................................................................ 12

*Biden v. Nebraska*, 143 S. Ct. 2355 (2023) ........................................................... passim

*Career Colleges & Sch. of Texas v. United States Dep't of Educ.*, 98 F.4th 220 (5th Cir. 2024). 11

*Missouri v. Biden*, 112 F.4th 531 (8th Cir. 2024) ....................................................... 7

*Missouri v. Biden*, No. 4:24-CV-00520-JAR, 2024 WL 3104514 (E.D. Mo. June 24, 2024) ....... 7

*Missouri v. Department of Education*, 24-cv-1316 (E.D. Mo.) ......................................... 8

*Missouri v. United States Dep't of Educ.*, No. 4:24-CV-01316-MTS, 2024 WL 4426370 (E.D. Mo. Oct. 3, 2024) ............................................................................................... 10

*Missouri v. United States Dep't of Educ.*, No. CV 224-103, 2024 WL 4069224 (S.D. Ga. Sept. 5, 2024) ...................................................................................................... 10

## Statutes

20 U.S.C. § 1078(b)(9)(A)(i) ............................................................................... 6

20 U.S.C. § 1078–10 .......................................................................................... 4

20 U.S.C. § 1087(a)(1) ....................................................................................... 4

20 U.S.C. § 1087(b) ........................................................................................... 4

20 U.S.C. § 1087(c) ........................................................................................ 4, 17
20 U.S.C. § 1087e(d)(1)(D) .................................................................................. 6
20 U.S.C. § 1087ee ............................................................................................... 4
20 U.S.C. § 1087j .................................................................................................. 4
20 U.S.C. § 1088(b)(1)(A)(i) .............................................................................. 15
20 U.S.C. § 1098bb ............................................................................................... 5
20 U.S.C. § 1098e ................................................................................................. 4

**Rules**

Dep't of Educ., *Student Debt Relief Based on Hardship for the William D. Ford Federal Direct Loan Program (Direct Loans), the Federal Family Education Loan (FFEL) Program, the Federal Perkins Loan (Perkins) Program, and the Health Education Assistance Loan (HEAL) Program; Withdrawal*, Dec. 20, 2024, *available at* https://tinyurl.com/4y5vpzyd ........ 3, 14, 15

Dep't of Educ., *Student Debt Relief for the William D. Ford Federal Direct Loan Program (Direct Loans), the Federal Family Education Loan (FFEL) Program, the Federal Perkins Loan (Perkins) Program, and the Health Education Assistance Loan (HEAL) Program; Withdrawal*, Dec. 20, 2024, *available at* https://tinyurl.com/y3ujvm9e .................................... 3

Federal Student Aid Programs (Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program), 87 Fed. Reg. 61,512 (Oct. 12, 2022)................................................................................................................. 2, 5

*Financial Value Transparency and Gainful Employment Rule*, 88 Fed. Reg. 70,004 (Oct. 10, 2023)....................................................................................................................... 15

*Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program*, 88 Fed. Reg. 43,820 (July 10, 2023).. 2, 6, 12

*Notice of Proposed Rulemaking on Student Debt Relief for the William D. Ford Federal Direct Loan Program (Direct Loans), the Federal Family Education Loan (FFEL) Program, the Federal Perkins Loan (Perkins) Program, and the Health Education Assistance Loan (HEAL) Program*, 89 Fed. Reg. 27,564 (Apr. 17, 2024) ...................................................................... 8

*Program Integrity: Gainful Employment*, 84 Fed. Reg. 31,392 (July 1, 2019) ..................... 16, 17

*Student Debt Relief Based on Hardship for the William D. Ford Federal Direct Loan Program (Direct Loans), the Federal Family Education Loan (FFEL) Program, the Federal Perkins Loan (Perkins) Program, and the Health Education Assistance Loan (HEAL) Program*, 89 Fed. Reg. 87,130 (Oct. 31, 2024) ......................................................................... 2, 11, 12, 13

*Student Debt Relief for the William D. Ford Federal Direct Loan Program (Direct Loans), the Federal Family Education Loan (FFEL) Program, the Federal Perkins Loan (Perkins) Program, and the Health Education Assistance Loan (HEAL) Program*, 89 C.F.R. 27,564 (Apr. 17, 2024)................................................................................................ 2, 10, 12

**Articles**

Annie Nova, *Check Your Email: U.S. Government Is Sending Notes to Millions on Upcoming Student-Loan Forgiveness*, CNBC, July 31, 2024, *available at* https://tinyurl.com/muspn6nt.. 8

Ayelet Sheffey, *8 Million Student-Loan Borrowers Who Remain Blocked from Cheaper Payments and Debt Cancellation Are Getting A Step Closer to A Final Decision on Biden's New Repayment Plan*, Business Insider, Oct. 20, 2024, *available at* https://tinyurl.com/9v5dxb2r .................................................................................. 14

Daniela Altimari, *Biden Launches New Effort to Salvage Student Loan Relief Plan*, Roll Call, June 30, 2023, *available at* https://tinyurl.com/bdeszsr7 ........................................................ 15

Danielle Douglas-Gabriel, *"All so confusing": Student Loan Borrowers in Limbo After Courts Halt a Popular Plan*, Wash. Post, Aug. 29, 2024, *available at* https://tinyurl.com/yc37m83e 14

*Education Secretary Says US to Use 'Whatever Pathway We Can' on Student Loan Relief*, NPR, July 3, 2024, *available at* https://tinyurl.com/3vav3uv3 .......................................................... 7

Gabriel Johnson, *Shortage of Kansas Trade Workers Calls for Increased Recruiting Efforts*, KSNT, Apr. 11, 2024, *available at* https://tinyurl.com/ykdxe6w5 ........................................... 1

Gillian Brassil, *What Biden's Education Secretary Says Californians Could Expect About Student Debt Relief*, AOL, Aug. 1, 2024, *available at* https://tinyurl.com/32nd6c27 ............... 8

Katherine Knott, *Borrowers Reeling After Appeals Court Declines to Clarify Order*, Insider Higher Ed, Aug. 21, 2024, *available at* https://tinyurl.com/ycyfkkvp ...................................... 15

Robert Farrington, *Confusion Reigns with Student Loan Borrowers Stuck in Limbo*, The College Investor, Sept. 16, 2024, *available at* https://tinyurl.com/2p8yk5xx ....................................... 14

Tara Siegel Bernard, *Biden's Student Debt Plan Is in Limbo. Confused? Here Are Some Answers*, NYT, Aug. 30, 2024, *available at* https://tinyurl.com/mr78z9hf ............................. 15

**Other Authorities**

Complaint, *Missouri v. Dep't of Educ.*, Case No. CV 224-103, 2024 WL 4069224 (S.D. Ga. filed Sept. 3, 2024) ..................................................................................................................... 9

House Committee on Education and the Workforce, Comment Letter Re: Student Debt Relief Based on Hardship for the William D. Ford Federal Direct Loan Program (Direct Loans), the Federal Family Education Loan (FFEL), the Federal Perkins Loan (Perkins) Program, and the Health Education Assistance Loan (HEAL) Program, 89 Fed. Reg. 87130 (Oct. 31, 2024), Dec. 2, 2024, *available at* https://tinyurl.com/ms2um4h ........................................................ 13

Oral Argument Transcript, *Missouri v. Dep't of Educ.*, Case No. CV 224-103, 2024 WL 4069224 (S.D. Ga. filed Sept. 3, 2024) ................................................................................................. 9

The White House, FACT SHEET: President Biden Announces New Actions to Provide Debt Relief and Support for Student Loan Borrowers, June 30, 2023, *available at* https://tinyurl.com/bp8vhcdk .................................................................................................. 7

The White House, Remarks by President Biden on the Saving on a Valuable Education Plan, Feb. 21, 2024, *available at* https://tinyurl.com/4wm7b3nd ...................................................... 7

## INTEREST OF AMICI

Blue collar and service workers are the life-blood of the undersigned States' economies. For example, every day millions in the States rely on mechanics to when their cars stall, plumbers when the pipes bursts, and HVAC technicians when the heat goes out.  In turn, they support their local economies, and their tax dollars support schools, roads, and other government services.  These important jobs do not happen out of nowhere.  The States require individuals who want to pursue a trade to be educated and licensed to, among other things, protect their fellow citizens.  Trade schools are to integral preparing these workers for their careers.  It is concerning then, that trade schools are closing, leading to a shortage of workers.[1]  And the unlawful Rule promulgated by the Department of Education will exacerbate the problem.

## INTRODUCTION

If one thing can be said about the Biden-Harris Department of Education it is this:  DoEd thinks itself a king, able to set policies untethered from Congress's.  It then works backward, combing the statutes to find any scintilla of authority for actions.  In so doing, it twists the law, usurps the role of Congress, and disdains the Supreme Court.

While the examples of this behavior are legion, the story of student loans (which many of the undersigned states challenged in court) lays it out clearly and provides a lens for the court to examine the equities in this case.  DoEd has spent the past three years unlawfully attempting to engage in mass cancellation of student debt.  First, there was the Federal Student Aid Programs (Federal Perkins Loan Program, Federal Family Education Loan Program, and William D. Ford Federal Direct Loan Program), 87 Fed. Reg. 61,512 (Oct. 12, 2022) (the "HEROES Plan"), in

---

[1] *See, e.g.*, Gabriel Johnson, *Shortage of Kansas Trade Workers Calls for Increased Recruiting Efforts*, KSNT, Apr. 11, 2024, *available at* https://tinyurl.com/ykdxe6w5.

which DoEd interpreted the word "waive" to mean they could transfer $430 billion dollars in debt from the people who took out the debt to unwilling taxpayers.  Then, there was the *Improving Income Driven Repayment for the William D. Ford Federal Direct Loan Program and the Federal Family Education Loan (FFEL) Program*, 88 Fed. Reg. 43,820 (July 10, 2023) (the "SAVE Plan"), which involved setting "repayments" at $0.00, waiving interest, and flat out canceling debt for millions of borrowers to the tune of $475 billion.  Then, there was *Student Debt Relief for the William D. Ford Federal Direct Loan Program (Direct Loans), the Federal Family Education Loan (FFEL) Program, the Federal Perkins Loan (Perkins) Program, and the Health Education Assistance Loan (HEAL) Program*, 89 C.F.R. 27,564 (Apr. 17, 2024) (the "Third Mass Cancelation Attempt").  The Third Mass Cancelation Attempt again interpreted "waive" to mean DoEd could forgive the debt of millions of borrowers who did not even bother applying for forgiveness.  Worse, DoEd admitted in open court that it intended to implement that rule in plain violation of the waiting periods required by several federal laws.

These schemes have failed over and over, because, as the courts have repeatedly said, Congress did not give DoEd the authority for any of this.  Despite these repeated admonishments from courts around the country, DoEd still presses forward.  In October, it commenced its fourth attempt to mass forgive loans, this time by stretching the term "hardship" past its breaking point.  *See Student Debt Relief Based on Hardship for the William D. Ford Federal Direct Loan Program (Direct Loans), the Federal Family Education Loan (FFEL) Program, the Federal Perkins Loan (Perkins) Program, and the Health Education Assistance Loan (HEAL) Program*, 89 Fed. Reg. 87,130 (Oct. 31, 2024) (the "Hardship Rule").  These failed regulations relate to student loan forgiveness, but they shed light on what DoEd is doing here: instead of administering the program Congress told it to administer, DoEd is attempting to "reform" the

program by punishing independent trade schools for a problem they did not create. The ultimate victims are the students looking to enter one of these trades as they will have less access to schools that provide training, which are oftentimes necessary to meet state licensing requirements. In doing so, DoEd is once again overstepping Congress.

## ARGUMENT

Over and over, DoEd has overstepped the authority Congress has given it to try and push though student loan forgiveness for political advantage. First, there was HEROES forgiveness, wherein DoEd decided "waive" means "mass cancelation." Then there was SAVE, which took a grain of authority from the Higher Education Act to reimagine the student loan system. Then, there was the Third Mass Cancelation attempt, wherein DoEd again interpreted "waive" to mean "forgive." Finally, there is the Hardship Rule, designed to include anything and everything as hardship deserving of forgiveness. While DoEd has withdrawn the final two rules, the department maintains it had the authority to enact them and could do so again if it chose. *See* Dep't of Educ., *Student Debt Relief for the William D. Ford Federal Direct Loan Program (Direct Loans), the Federal Family Education Loan (FFEL) Program, the Federal Perkins Loan (Perkins) Program, and the Health Education Assistance Loan (HEAL) Program; Withdrawal*, Dec. 20, 2024, *available at* https://tinyurl.com/y3ujvm9e; Dep't of Educ., *Student Debt Relief Based on Hardship for the William D. Ford Federal Direct Loan Program (Direct Loans), the Federal Family Education Loan (FFEL) Program, the Federal Perkins Loan (Perkins) Program, and the Health Education Assistance Loan (HEAL) Program; Withdrawal*, Dec. 20, 2024, *available at* https://tinyurl.com/4y5vpzyd.

Over and over the courts have told DoEd it does not have the power to forgive these loans. But DoEd does not care. Nor does it care about the impact it is having on student loan borrowers or taxpayers. This case is no different. Once again, DoEd has taken a modicum of

authority and is using it to rewrite a program with no thought to the schools, students, or others who are impacted. This court should remind DoEd (once again) that it only has the power conferred by Congress, and that authority does not include this Rule.

## I. The HEROES Act Forgiveness Plan

DoEd's blunder can best be summarized as follows: Congress gave DoEd certain responsibilities and limited power to carry out those responsibilities; DoEd overstepped its power; the courts enforced the limits; DoEd ignored the Courts and crafted a new plan.

### a. HEROES Forgiveness: DoEd says "waive" means "forgive."

Congress has provided specific means by which DoEd may forgive student loans. First, borrowers who serve in the armed forces, take public service jobs, or are engaged in specified occupations are eligible for loan forgiveness after a set number of years. *See* 20 U.S.C. §§ 1078–10, 1087j, 1087ee. Second, DoEd may for forgive a borrowers loans if he has died or become permanently and totally disabled." *Id.* § 1087(a)(1). Third, the loans may be discharged though bankruptcy. *Id.* § 1087(b). Fourth, borrowers on an Income Based Repayment ("IBR") Plan may have their loans canceled after twenty or twenty-five years. *Id.* § 1098e. Finally, borrowers may have their loans forgiven if their schools close or they are defrauded by the school. *Id.* at § 1087(c).

Unsatisfied with these options, in 2022, DoEd decided to create a brand-new loan forgiveness program. DoEd first dug the HEROES Act out of the freezer. This law, which was passed in response to the 9/11 terrorists attacks, allows the Secretary of Education to "waive or modify" the terms of student loans if the "Secretary deems [it] necessary in connection with a war or other military operation or national emergency." 20 U.S.C. § 1098bb(a)(1)-(2). It then looked around at the waning COVID-19 pandemic and decided that it constituted enough of a

4

"national emergency" for the law to apply.[2]  87 Fed. Reg. 61,512.  Finally, it decided "waive" or "modify" now meant "discharge."  So, it announced HEROES Act forgiveness: loan cancelation of $10,000 or $20,000 for income eligible borrowers.  *Id.* at 61,514.  It estimated the total cost of the plan would be around $430 billion.

The plan was immediately challenged.

### b.  *Biden v. Nebraska*: The Supreme Court says "waive" does *not* mean "forgive," and DoEd does not have authority to forgive loans.

Unsurprisingly, the Supreme Court blocked the HEROES Forgiveness on June 30, 2023. Two things were clear from the Court's opinion.  First, the Court determined that DoEd needed Congressional authorization to forgive student loans.  "[T]he basic and consequential tradeoffs inherent in a mass debt cancellation program are ones that Congress would likely have intended for itself."  *Biden v. Nebraska*, 143 S. Ct. 2355, 2375 (2023) (internal quotation marks omitted). It is Congress, not DoEd, who decides whether and under what circumstances loans are forgive. And Congress *had* decided that DoEd could forgive, "but only in certain limited circumstances." *Id.* at 2363.Second, it found the HEROES Act was not one of those "limited circumstances." Simply put, the power to "waive" terms and conditions did not include the power to "waive" loan balances or "waive" the obligation to pay.  *Id.* at 2370.  "Waive" did not mean "forgive." Nothing in the HEROES Act gave DoEd the power to "draft a new section of the Education Act from scratch by 'waiving' provisions root and branch and then filling the empty space with radically new text."  *Id.* at 2371; *see also id.* at 2370 ("The addition of these new and substantially different provisions cannot be said to be a 'waiver' of the old in any meaningful sense.").  The Supreme Court also made clear that any claim by DoEd to be able to cancel loans

---

[2] Just two weeks after DoEd used the pandemic as the triggering "national emergency," President Biden would declare that "the pandemic is over."  *Biden v. Nebraska*, 143 S. Ct. 2355, 2364 (2023).

would need to be backed up by an unequivocally clear statement by Congress given the "staggering" "economic and political significance" of such a measure.  *Id.* at 2373.  So, outside of the four ways specified by Congress, DoEd cannot forgive student loans.

## II.    The SAVE Plan: DoEd tries to forgive loans again.

The very day the Court struck down HEROES Act forgiveness, DoEd announced a new mass student loan forgiveness plan: The Saving on a Valuable Education (SAVE) Plan.[3]  The SAVE Plan is an updated Income Driven Repayment (IDR) Plan.  Ordinarily, a borrower's loan repayments are fixed at 1/120th of the loan per month, with the assumption that the loan will be repaid with interest in ten years.  *See* 20 U.S.C. § 1078(b)(9)(A)(i).  IDR Plans allow borrowers to pay a percentage of their discretionary income per month, which fluctuates year to year, over a period of up to twenty-five years.  20 U.S.C. § 1087e(d)(1)(D).  Because these payment amounts fluctuate, a person who has a high income in one year (perhaps sales commissions are particularly good) will pay substantially more, but if a person has a worse year, payments may be less than under the standard payment plan.

The SAVE Plan set the threshold for discretionary income so high that most borrowers on the Plan would have repayments of $0.00 per month.  It then waived interest as long as a borrower made those repayments (even if the repayment was $0.00).  It then declared that the balance of the loan could be forgiven in as little as ten years.  SAVE is essentially, a "sliding-scale loan-forgiveness calculation under which loans can be forgiven in as little as 10 years." *Missouri v. Biden*, 112 F.4th 531, 534 (8th Cir. 2024).  The estimated cost of this plan was even *higher* than the first one: $475 billion.  *Id.*

---

[3] 88 Fed. Reg. 43,820.

The Administration did not hide its defiance of the Supreme Court's decision. Announcing the SAVE Plan, Education Secretary Cardona said, "We believe the Supreme Court got it completely wrong" and sharply criticized the Court for "a series of poor decisions."[4]  The Administration announced the SAVE plan the same day "[i]n light of the Supreme Court's ruling this morning."[5]  Later, President Biden said, "the Supreme Court blocked [loan forgiveness]. They blocked it. But that didn't stop me.  I announced we were going to pursue alternative paths for student debt relief for as many borrowers as possible."[6]

Like the HEORES Plan, the SAVE rested enormous agency action on a "wafer-thin reed" of authority.  *Missouri v. Biden*, 112 F.4th at 438 (quoting *Biden v. Nebraska*, 143 S. Ct. at 2371).  And, unsurprisingly, the SAVE Plan has also been put on ice.  Two district courts enjoined parts of the Plan, one concluding that "it is far from clear that Congress has expressly granted the Secretary [the power to forgive loans it claimed in the SAVE Plan]."  *Missouri v. Biden*, No. 4:24-CV-00520-JAR, 2024 WL 3104514, at *23 (E.D. Mo. June 24, 2024).  On appeal, the Eighth Circuit enjoined the entire SAVE Plan.  *Missouri v. Biden*, 112 F.4th at 538. Regarding loan forgiveness, "Congress has made it clear under what circumstances loan forgiveness is permitted, and the ICR plan is not one of those circumstances."  *Id.* at 537.

### III.    The Third Mass Cancelation Attempt: DoEd says "waive" means "forgive."

While litigation over the SAVE Plan was pending, DoEd announced a third stab at student loan forgiveness.  Once again relying on the word "waive," DoEd invoked its authority to "waive" the terms and conditions of federally guaranteed Federal Family Education Loans to

---

[4] *Education Secretary Says US to Use 'Whatever Pathway We Can' on Student Loan Relief*, NPR, July 3, 2024, *available at* https://tinyurl.com/3vav3uv3.
[5] The White House, FACT SHEET: President Biden Announces New Actions to Provide Debt Relief and Support for Student Loan Borrowers, June 30, 2023, *available at* https://tinyurl.com/bp8vhcdk.
[6] The White House, Remarks by President Biden on the Saving on a Valuable Education Plan, Feb. 21, 2024, *available at* https://tinyurl.com/4wm7b3nd.

"forgive" federal direct loans. *See Notice of Proposed Rulemaking on Student Debt Relief for the William D. Ford Federal Direct Loan Program (Direct Loans), the Federal Family Education Loan (FFEL) Program, the Federal Perkins Loan (Perkins) Program, and the Health Education Assistance Loan (HEAL) Program*, 89 Fed. Reg. 27,564 (Apr. 17, 2024).  DoEd estimated the plan would reduce or outright cancel debt for thirty million borrowers, costing taxpayers approximately $162.4 billion dollars.  *See* 89 Fed. Reg. 27,565–66.

DoEd sent emails to millions of borrowers announcing that it would issue another round or forgiveness in October, shortly before the 2024 Presidential Election, in what the Chairwoman of the House Committee on Education and the Workforce described as "just another illegal scheme intended to buy votes in November."[7]  Indeed, DoEd informed loan servicing organizations that they would have to inform all recipients of (illegal) loan forgiveness that they should credit the "Biden-Harris Administration" for their new windfall.  *Missouri v. Department of Education*, 24-cv-1316 (E.D. Mo.), ECF 1-10 (DoEd document instructing service organizations to email borrowers "Congratulations! The Biden-Harris Administration has forgiven a portion of your federal student loan(s) listed below with [SERVICER NAME].").  The emails gave borrowers one month to "opt-out" of the promised relief.[8]  There was no need to opt-in (let alone apply) if the borrower wanted his loans canceled and DoEd determined the borrower was eligible.

While this was unfolding, the Eighth Circuit enjoined the SAVE Plan.  Just as it had not been deterred by the Supreme Court's remonstrations in *Biden v. Nebraska*, DoEd did not so much as pause when its second mass debt forgiveness program was blocked.  Instead of learning

---

[7] Annie Nova, *Check Your Email: U.S. Government Is Sending Notes to Millions on Upcoming Student-Loan Forgiveness*, CNBC, July 31, 2024, *available at* https://tinyurl.com/muspn6nt.
[8] Gillian Brassil, *What Biden's Education Secretary Says Californians Could Expect About Student Debt Relief*, AOL, Aug. 1, 2024, *available at* https://tinyurl.com/32nd6c27.

the right lesson—that agencies must follow the law and not try and forgive student loans when Congress and the Courts say no—DoEd learned that if it wanted to forgive loans, it needed to do it quickly enough and secretly enough that the deed would be done before anyone could mount a challenge.  So, it got to work.

Before the plan was officially published, Missouri discovered that DoEd had taken steps to implement it and had been lying to the public about the timing of its newest plan.  DoEd changed its contracts with loan servicers and required them to collect the names of "eligible" borrowers so that it could cancel their debt on a moment's notice.  *See* Complaint para. 79, 84-93, *Missouri v. Dep't of Educ.*, Case No. CV 224-103, 2024 WL 4069224 (S.D. Ga. filed Sept. 3, 2024).  The moment's notice was key.  Even though DoEd had told the country it planned on canceling the debt in October, Missouri learned it actually planned on doing so in September.  *Id.* para. 79.  Indeed, DoEd told its servicing organizations, "In *September* of 2024, the Biden-Harris Administration will launch the Federal Student Loan Debt Initiative."  *Id.* ECF 1-12 at 2.  And instead of publishing the plan sixty days before it took effect, which is required by federal law absent special circumstances, DoEd planned to carry it out seventy-two hours after publication.  Oral Argument Transcript at 40, *Missouri v. Dep't of Educ.*, Case No. CV 224-103, 2024 WL 4069224 (S.D. Ga. filed Sept. 3, 2024).  This way, no one could challenge the rule before it was too late.

Fortunately for the rule of law and the American taxpayer, a court in Georgia found that by secretly altering contracts with servicers and taking other steps to implement the Rule, the rule was "final" for the purposes of the APA and could be challenged even though it had not yet been published.  The court then granted a temporary restraining order after finding the Third Mass Cancelation Attempt was also unlawful, "especially [] in light of the recent rulings across

the country striking down similar federal student loan forgiveness plans." *Missouri v. United States Dep't of Educ.*, No. CV 224-103, 2024 WL 4069224, at *2 (S.D. Ga. Sept. 5, 2024). The case was later transferred to the Eastern District of Missouri, where the court wasted no time in granting an injunction, which DoEd did not even bother to appeal. *Missouri v. United States Dep't of Educ.*, No. 4:24-CV-01316-MTS, 2024 WL 4426370 (E.D. Mo. Oct. 3, 2024). DoEd withdrew the Third Mass Cancelation Attempt on December 20, 2024, but not because it decided to follow the courts and Congress. Rather, DoEd maintained it had authority to "Waive" (i.e., forgive) mass amounts of student debt under this plan, it just did not have the time to do it. Dep't of Educ., *Student Debt Relief for the William D. Ford Federal Direct Loan Program (Direct Loans), the Federal Family Education Loan (FFEL) Program, the Federal Perkins Loan (Perkins) Program, and the Health Education Assistance Loan (HEAL) Program; Withdrawal*, Dec. 20, 2024, available at https://tinyurl.com/y3ujvm9e.

DoEd was not done trying. Less than one month after two district courts and one circuit court found it did not have statutory authority to issue the unpublished Rule, DoEd announced a fourth round of loan forgiveness. *See Student Debt Relief Based on Hardship for the William D. Ford Federal Direct Loan Program (Direct Loans), the Federal Family Education Loan (FFEL) Program, the Federal Perkins Loan (Perkins) Program, and the Health Education Assistance Loan (HEAL) Program*, 89 Fed. Reg. 87130 (Oct. 31, 2024). This time, DoEd claimed the power to cancel loans based on a finding of "hardship." Id. at 87,138—39. To decide whether a borrower is experiencing "hardship," DoEd laid out a non-exhaustive list of seventeen factors, including household income, assets, age, age of the loan, and "[a]ny other indicators of hardship identified by the Secretary." *Id.* While the Hardship Rule has also since been withdrawn, DoEd has also not repudiated the flawed interpretation of the HEA on which it based the rule. Dep't of

10

Educ., *Student Debt Relief Based on Hardship for the William D. Ford Federal Direct Loan Program (Direct Loans), the Federal Family Education Loan (FFEL) Program, the Federal Perkins Loan (Perkins) Program, and the Health Education Assistance Loan (HEAL) Program; Withdrawal*, Dec. 20, 2024, *available at* https://tinyurl.com/4y5vpzyd.

***

This version of DoEd does not behave like a serious agency. It does not follow the law, whether that law comes from Congress or the Supreme Court. Indeed, the Fifth Circuit has already recognized this. In another legal challenge to a recent action taken by DoEd, the Fifth Circuit said, "But given the manifest legal shortcomings of the challenged portions of this Rule, it seems to be of a piece with the Executive Branch's larger goal to sidestep, to the greatest extent possible, the Supreme Court decision holding Presidential student loan discharges illegal in *Biden v. Nebraska*." *Career Colleges & Sch. of Texas v. United States Dep't of Educ.*, 98 F.4th 220, 226 n.1 (5th Cir. 2024).

As described below, each of DoEd's lawless schemes has serious consequences.

**IV.    DoEd Spites the Taxpayers and Leaves Borrowers in the Lurch**

On paper, it is easy to view DoEd's actions as no more than an academic exercise in testing the limits of agency power. But these Rules have real-world consequences. Every time DoEd acts (or tries to act) unlawfully, taxpayers are stuck with a bill for hundreds of billions of dollars for which they did not sign up, and borrowers are left in the lurch. And worse, DoEd does not care.

**a.    DoEd tries to stick taxpayers with a bill for hundreds of billions of dollars.**

DoEd's HEROES Plan was estimated to cost $430 billion to $479 billion. *Biden v. Nebraska*, 143 S. Ct. at 2362. The SAVE Plan has an estimate of $156 billion to $475 billion.

11

88 Fed. Reg. 43,820; *Alaska v. United States Dep't of Educ.*, No. 24-1057-DDC-ADM, 2024 WL 3104578, at *11 (D. Kan. June 24, 2024) (citing Penn Wharton, *Biden's New Income-Driven Repayment ("SAVE") Plan: Budgetary Cost Estimate Update*, University of Pennsylvania (July 17, 2023), https://tinyurl.com/bdzy426b). The Third Mass Cancelation Rule could cost $162.4 billion dollars. *See* 89 Fed. Reg. 27,565–66. And the "Hardship" Rule has an estimated cost of $111.9 billion. 89 Fed. Reg. 87,158–59.

While there is some overlap in the costs as many borrowers would be eligible to have some or all of their debt canceled under more than one plan, the total cost of the Plans is unknown. Why? Because DoEd has not bothered to accurately calculate it. DoEd does not think it is required to taxpayers how much debt it is going to transfer to them.

DoEd has made its contempt clear. When it first announced the SAVE Plan, DoEd produced an estimated cost of $156 billion. 88 Fed. Reg. 43,820. However, at that time, HEROES Act forgiveness was enjoined by the Eighth Circuit. Members of the public pointed this out to DoEd. They suggested that, if HEROES forgiveness was struck down by the Supreme Court, some of the cost of that plan would be transferred to the SAVE Plan. In light of this, they requested a second cost estimate. DoEd's response? No. In the Final version of the SAVE Plan, DoEd confidently proclaimed, "The Department is confident in our authority to pursue debt relief and is awaiting the Supreme Court's ruling on the issue." *Id.* at 43,875. DoEd made this statement ten days after it *lost* the *Biden v. Nebraska* decision. And during litigation over the SAVE Plan, DoEd claimed it did not have to give an accurate estimate because Congress had not expressly told it to, notwithstanding the fact that the APA requires agencies to consider all relevant factors. Apparently, DoEd does not think the cost of a program is "relevant" to the American people.

This is playing out again in the "Hardship" Rule. Even though the SAVE Plan has been enjoined, DoEd declined to estimate how much the Hardship Rule would cost if costs from the SAVE Plan are transferred. *See* 89 Fed. Reg. 87,157.

Members of Congress and the public expressed concern that these rules would lead to inflation and higher costs of education. "Like the Department's two other forgiveness schemes that are under court injunctions, this fourth scheme is likely to face a similar fate for exceeding the Secretary's authority .… This latest scheme is merely a Band-Aid that forces taxpayers to shoulder the responsibility of paying off someone else's debt. If this administration spent half as much time working to address the root causes of our broken student loan system as peddling this illegal free college agenda, college costs would be lower, [and] the student loan repayment process would be simpler …"[9] It is to be seen if DoEd will disregard these concerns.

### b. Borrowers are left confused and scrambling.

Ostensibly, the point of all of these regulations was and is to help borrowers. But the mess DoEd has created for them is glaring.

In arguing the HEROES Act was constitutional, DoEd argued "The whole point of [the HEROES Act] . . . is to ensure that in the face of a national emergency that is causing financial harm to borrowers, the Secretary can do something." *Biden v. Nebraska*, 143 S. Ct. 2355, 2372 (2023) (quoting Tr. of Oral Arg. 55). The same appeal to purpose can been seen in all these plans. The HEROES Act was indented to "ease the burden on students who are affected individuals." 87 Fed. Reg. 61,512. The SAVE Plan claimed to "simplify" the process of repaying loans and to help borrowers "avert … the significant negative consequences associated"

---

[9] House Committee on Education and the Workforce, Comment Letter Re: Student Debt Relief Based on Hardship for the William D. Ford Federal Direct Loan Program (Direct Loans), the Federal Family Education Loan (FFEL), the Federal Perkins Loan (Perkins) Program, and the Health Education Assistance Loan (HEAL) Program, 89 Fed. Reg. 87130 (Oct. 31, 2024), Dec. 2, 2024, *available at* https://tinyurl.com/ms2um4h.

with delinquency and default. 88 Fed. Reg. 43,820. The Third Mass Cancelation Rule sought to address the "negative psychological impacts on borrowers who are attempting to repay their debt but are unable to, including that they lose hope and motivation to repay their debt." 89 Fed. Reg. 27,572. And the Hardship Rule was intended to eliminate the hardship borrowers face because of their loans. 89 Fed. Reg. 87,131.

These are empty words. Even though the Supreme Court had said DoEd could not forgive loans without clear authorization from Congress just days before the department announced the SAVE Plan, DoEd pressed on with the SAVE Plan without a backup plan. It enrolled millions of borrowers, promising them forgiveness and lower payments, all while litigation was ongoing.[10] It did not think about an off ramp.

Of course, the SAVE Plan was blocked. Now, borrowers are "in limbo"[11] and experiencing "whiplash."[12] "Borrowers across the country are grappling with increasing confusion and anxiety."[13] Because it did not have a backup plan, DoEd has stalled, pausing payments entirely. This means that, unless there is some future regulatory fix or individuals retroactively make payments, "borrowers [] won't receive any payment credits toward the Public Service Loan Forgiveness program," the Congressionally created forgiveness plan for those who work for the government or non-profits, which requires ten years of service and payments.[14] Rather than accept responsibility for the chaos it created, DoEd has attempted to shift the blame.

---

[10] Robert Farrington, *Confusion Reigns with Student Loan Borrowers Stuck in Limbo*, The College Investor, Sept. 16, 2024, *available at* https://tinyurl.com/2p8yk5xx.

[11] Danielle Douglas-Gabriel, *"All so confusing": Student Loan Borrowers in Limbo After Courts Halt a Popular Plan*, Wash. Post, Aug. 29, 2024, *available at* https://tinyurl.com/yc37m83e.

[12] Ayelet Sheffey, *8 Million Student-Loan Borrowers Who Remain Blocked from Cheaper Payments and Debt Cancellation Are Getting A Step Closer to A Final Decision on Biden's New Repayment Plan*, Business Insider, Oct. 20, 2024, *available at* https://tinyurl.com/9v5dxb2r.

[13] Farrington, *supra*, note 10.

[14] Tara Siegel Bernard, *Biden's Student Debt Plan Is in Limbo. Confused? Here Are Some Answers*, NYT, Aug. 30, 2024, *available at* https://tinyurl.com/mr78z9hf.

First, it blamed Republican attorneys general and the states.[15]  Then it blamed the courts.[16]

Finally, despite DoEd's insistence that it truly wanted to help student borrowers, whose needs

were pressing, when it withdrew the Third Mass Cancelation attempt and the proposed Hardship

Rule, DoEd did so because it had more important priorities.  Dep't of Educ., *Student Debt Relief*

*for the William D. Ford Federal Direct Loan Program (Direct Loans), the Federal Family*

*Education Loan (FFEL) Program, the Federal Perkins Loan (Perkins) Program, and the Health*

*Education Assistance Loan (HEAL) Program; Withdrawal*, Dec. 20, 2024, available at

https://tinyurl.com/y3ujvm9e.

## V.      DoEd Seeks to Punish Trade Schools

The student loan forgiveness saga provides a lens through which this Rule should be

analyzed.  DoEd regularly twists statutes, flouts Congress and the courts, and creates arbitrary

and capricious rules that hurt taxpayers and students.

Congress charged DoEd with administering the Title IV program, including by ensuring

schools were eligible for Title IV funding by "provind[ing]. . . training to prepare students for

gainful employment in a recognized profession."  20 U.S.C. § 1088(b)(1)(A)(i).  DoEd

promulgated the *Financial Value Transparency and Gainful Employment Rule*, 88 Fed. Reg.

70,004 (Oct. 10, 2023) to determine whether students were "gainfully employed" after

graduation.  Unfortunately, as before, the Rule is untethered to the statute and reality.

The Supreme Court told DoEd it needed clear Congressional approval to forgive student

loans.  DoEd and the President publicly proclaimed they did not care what the Supreme Court

---

[15] Daniela Altimari, *Biden Launches New Effort to Salvage Student Loan Relief Plan*, Roll Call, June 30, 2023, *available at* https://tinyurl.com/bdeszsr7.

[16] Katherine Knott, *Borrowers Reeling After Appeals Court Declines to Clarify Order*, Insider Higher Ed, Aug. 21, 2024, *available at* https://tinyurl.com/ycyfkkvp.

did. The agency then tried three more time to mass forgive loans, each time resting its claimed

authority on a twisted interpretation of a statute.

The same is playing out here. While the Courts have yet to tell DoEd that this particular

Rule is unlawful and contrary to Congressional intent, Congress has. DoEd expressly

acknowledged as much in 2019, when it pulled back an earlier version of the rule:

> It should have been clear to the Department that the GE regulations did not comport with congressional intent when a bipartisan group of 113 Members of the House of Representatives, led by Congressman Alcee Hastings (D-FL), sent a letter in 2011 to President Obama asking him to withdraw the GE regulations. Further, the Department should have noted that the House of Representatives passed House Amendment 94 to House Resolution 1, the Disaster Relief Appropriations Bill of 2013, with a vote of 289 to 136. This amendment would have prohibited the Department from implementing the 2011 GE rule. Although the amendment was not included in the final bill, the amendment should have given the Department pause before claiming that the GE regulations were consistent with Congress' intent.

> Despite numerous reauthorizations of the HEA between 1964 and 2008, Congress never attempted to define "gainful employment" based on a mathematical formula nor did it attempt to define the term using threshold debt-to-earnings ratios. Congress never attempted to prohibit students who attended GE programs from participating in IDR programs. In addition, the GE regulations were also identified in 2015 by the bipartisan Senate Task Force on Higher Education Regulation as a glaring example of the Department's "increasing appetite" for regulation.

> Despite previous assertions, the Department now recognizes that it had incorrectly described congressional intent and engaged in regulatory overreach, as discussed throughout these final regulations, and for those reasons, and the others described in the NPRM and these final regulations, it is rescinding the GE regulations.

*Program Integrity: Gainful Employment*, 84 Fed. Reg. 31,392, 31,402 (July 1, 2019) (footnotes

omitted). Neither the statute nor Congressional intent has changed from 2019. The Rule is just

as unlawful now as it would have been then. Nonetheless, DoEd is determined to plow ahead,

usurping Congress and putting its own priorities first.

DoEd claims the Rule is necessary because it protects student borrowers and taxpayers.

Dkt. No. 34 at 1. DoEd argued the same in its failed student loan forgiveness rules. *See Biden v.*

*Nebraska*, 143 S. Ct. at 2372. DoEd cannot "elide the statutory text" and administrative scheme

set by Congress with appeals to altruism. *Id.* Congress has already put in place systems to help students and taxpayers with the very problems DoEd claims it is trying to address here. As DoEd aptly recognized in 2019, Congress created Income Based Repayment so that students with low salaries (including some who might graduate from trade schools) could take advantage of loan programs without being overly burdened by their loan repayments. 84 Fed. Reg. 31,402. And, as discussed above, if a school closes or is found to have committed fraud, students may have their loans forgiven. 20 U.S.C. § 1087(c). In fact, as DoEd also recognized in 2019, this Rule will likely have the opposite effect on students and taxpayers. "The Department shares the concern of commenters who highlighted the need to protect low-income students and taxpayers from programs with poor outcomes, and from waste, fraud, and abuse. However, we do not believe the GE regulations are an effective tool for either of those purposes. The Rule will drive schools out of business, leaving potential students with fewer options for education that can and will lead to jobs." 84 Fed. Reg. 31,402. Its concerns about protecting taxpayers also ring hollow given their attempts to placed hundreds of billions of dollars in unlawful student debt cancellation at the feet of taxpayers, many of whom do not have student loans or paid them off.

Ultimately, DoEd is not truly concerned with taxpayer or student borrowers. It is not bothered by Courts or Congress. All the agency seeks is its own power. If schools are forced to close their doors, students lose access to trades, and taxpayers are stuck with the bill, well, that is their problem, not DoEd's. For this reason, any interpretation of the law by DoEd and any rule it enacts based on that interpretation should be viewed with extreme skepticism.

## CONCLUSION

For these reasons, the Court should grant judgment in favor of Plaintiffs.


Respectfully submitted,


**KRIS W. KOBACH**                                **ANDREW BAILEY**
**Kansas Attorney General**                       Missouri Attorney General

*/s/ Abhishek S. Kambli*                          */s/ Joshua M. Divine*
Abhishek S. Kambli                                Joshua Divine, #69875MO
*Deputy Attorney General*                         *Solicitor General*
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor                     Office of the Missouri Attorney General
Topeka, Kansas 66612                              207 W. High Street
Telephone: (785) 296-2215                         P.O. Box 899
Fax: (785) 296-3131                               Jefferson City, Missouri 65102
                                                  Telephone: (573) 751-8870
                                                  Facsimile: (573) 751-0774
                                                  Josh.Divine@ago.mo.gov


**KEN PAXTON**
**Attorney General of Texas**

*/s/ David Bryant*
Brent Webster
First Assistant Attorney General
Ralph Molina
Deputy First Assistant Attorney General
Austin Kinghorn
Deputy Attorney General for Legal Strategy
Ryan Walters
Chief, Special Litigation Division
Texas Bar No. 254105085
David Bryant
Senior Special Counsel
Attorney-in Charge
Texas Bar No. 03281500
Munera Al-Fuhaid
Special Counsel
Texas Bar No. 24094501
Mark A. Csoros
Assistant Attorney General
Texas Bar No. 24142814

STEVE MARSHALL
Attorney General of Alabama

AUSTIN KNUDSEN
Attorney General of Montana

SEAN D. REYES
Attorney General of Utah

THEODORE E. ROKITA
Attorney General of Indiana

ALAN WILSON
Attorney General of South Carolina

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2024, I electronically filed the foregoing with the

Clerk of the Court for the U.S. District Court for the Northern District of Texas by using the

CM/ECF system, which will serve a copy of same on all counsel of record.

 /s/ *Abhishek S. Kambli*
Abhishek S. Kambli