IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| AMERICAN ASSOCIATION OF COSMETOLOGY SCHOOLS *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, *et al.*,<br><br>Defendants. | Civil Action No. 4:23-cv-01267-O |

### AACS PLAINTIFFS' BRIEF IN OPPOSITION TO MOTION TO EXTEND

The government's motion for an extension to file its reply brief ("Motion") puts the existence of multiple proprietary and vocational schools at risk (and threatens the educations of the students that attend them). The U.S. Department of Education's ("Department") recently announced its intention to finalize "gainful employment" calculations just as the government would get its last brief on file (if its motion is granted). Those results will lead to swift and severe sanctions against proprietary and vocational schools. Moreover, the government's motion is a byproduct of the briefing schedule that *the government insisted upon* and to which the American Association of Cosmetology Schools ("AACS") and DuVall's School of Cosmetology, L.L.C. ("DuVall") (collectively, "AACS Plaintiffs") objected. Furthermore, the government's explanation for why it needs more time is weak and illogical. The government has not proved any diligence whatsoever in meeting its current reply deadline, and it has failed to argue other factors this Court must consider under Fifth Circuit precedent. For these reasons, and others explained below, the Court should deny the government's motion for more time to file a reply brief.

I.   **LEGAL STANDARD**

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (quoting *S & W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)). "Courts consider four factors in determining good cause: (1) the party's explanation for its failure to meet the deadline, (2) the importance of the extension to the moving party, (3) potential prejudice to the non-movant in allowing the extension, and (4) the availability of a continuance to cure such prejudice." *Charter Sch. Sols. v. GuideOne Mut. Ins. Co.*, 333 F.R.D. 97, 100 (W.D. Tex. 2019) (quoting *Bell*, 346 F.3d at 546). None of these factors weighs in favor of the government.

II.   **AACS Members and Other Schools Face Immense Prejudice.**

The government understates the prejudice that AACS members and many other schools would suffer if the Court grants the Motion. It vaguely argues that the Department "must proceed with a number of further steps before any results under the regulations might be determined or made public" and suggests that it "see[s] no prospect that such determinations would be completed before the requested reply deadline . . . ." Motion at 3. This position—unsupported by any evidence (not even a declaration from the Department)—is undermined by the Department's own recent announcements, and it fails to appreciate that the prejudice schools will endure will last well beyond "the requested reply deadline."

Among the many burdens the "Financial Value Transparency and Gainful Employment" rule, 88 Fed. Reg. 70,004 (Oct. 10, 2023) ("Final Rule"), arbitrarily imposes on schools is an obligation to report, on an annual basis, data on the students who enrolled in their programs, the aid they received, and their cost of attendance, among other data elements. 88 Fed. Reg. at 70,191

**BRIEF IN OPPOSITION TO MOTION TO EXTEND**                                                Page 2

(codified at 34 C.F.R. § 668.408).  These reports serve as the foundation for the Department's "gainful employment" calculations.  The deadline for these reports was January 15, 2025.[1, 2]  Schools that did not report their data by January 15 are still obligated to prepare and file their reports—processes that co-plaintiffs Ogle School Management, LLC and Tricoci University of Beauty Culture, LLC (collectively, "Ogle Plaintiffs") showed cost considerable money that they can never recover.  *See* ECF 10 at 43-44.  While significant, these mounting costs are only part of the prejudice schools face.

On January 17, 2025, the Department announced that "the completers lists associated with [the Final Rule] have been completed, and those data will be ***shortly*** sent to another Federal agency to calculate median earnings information."[3]  The Department reaffirmed (with emphasis added) that it is "staying on track t***o meet the Department's goal of making these data available to students this spring***."  *Id*.  Thus, according to the Department's own announcement, it expects to calculate whether programs "pass" or "fail" their unlawful debt-to-earnings and earnings premium tests "***this spring***."  Spring begins on March 20, 2025, and there is nothing stopping the Department from moving faster if it chooses.

---

[1]   https://fsapartners.ed.gov/knowledge-center/library/electronic-announcements/2024-03-29/timeline-financial-value-transparency-and-gainful-employment-reporting-requirements-updated-sept-16-2024;

   https://fsapartners.ed.gov/knowledge-center/library/electronic-announcements/2024-09-13/updated-timeline-financial-value-transparency-and-gainful-employment-reporting-and-completers-lists

[2] The Department has since reopened the reporting process for schools that "were unable to complete debt reporting" by the January 15, 2025 deadline.  However, the Department's announcement makes clear that at least *some* schools were able to provide the data required under 34 C.F.R. § 668.408.

[3]   https://fsapartners.ed.gov/knowledge-center/library/electronic-announcements/2025-01-17/reopening-fvt-and-ge-debt-reporting-process-until-mid-february (emphasis added)

**BRIEF IN OPPOSITION TO MOTION TO EXTEND**                                                                 Page 3

Calculating whether a school "passes" or "fails" is not some herculean effort. The Department already has the names and debt load of the graduates/completers it will measure from schools' January 15 reports. Nor is it likely that it will take much time for the IRS to provide earnings data for a program's graduates, especially because programs with as few as 30 completers will be tested under the Final Rule. Those data points are all the Department needs to calculate whether a school "passes" or "fails." Thus, though the government offers the *ipse dixit* that there is "no prospect" that calculations under the Final Rule will be done by late March, the facts show the Department is actively working to meet that goal and has little left to do to get there.

A "failing" program faces immediate harm. For example, the Department **_must_** demand "financial securities" (i.e., a letter of credit) from any school that received at least 50 percent of its Title IV funds in its most recently completed fiscal year from proprietary/vocational programs that "fail" either of the "gainful employment" metrics. 34 C.F.R. § 668.171(c)(2)(iii). As AACS Plaintiffs described in their merits brief, many cosmetology schools (DuVall, for example) receive at least 50 percent of their Title IV funds from programs that "fail" and would have to post a financial security once the Department's calculations are finished this spring. ECF 29 at 10, 10 n.6. These financial securities must pledge at least ten percent of the sum of Title IV funds that the school received the year prior, but can require up to 50 percent. *See* 34 C.F.R. §§ 668.171(c)(1), 668.171(c)(2)(iii), 668.175(c). In practice, these mandatory guaranties can extend into the millions, strip an institution of all of its cash, and effectively force it out of business. As another example, schools that "fail" the Department's arbitrary "gainful employment" tests will be declared "financially irresponsible," subjecting them to severe cash-flow restrictions and

"heightened cash management."[4] 34 C.F.R. § 668.162(d). As one more example, as the Department's announcement makes clear, it will have arbitrarily published misleading data intended to steer students away from so-called "failing" programs. That bell cannot be un-rung. These consequences reflect significant prejudice to proprietary and vocational schools.

Finally, the government acts as if prejudice to schools will end on "the requested reply deadline" in March, forgetting that the parties will still have to appear for oral argument and that this Court will need time to actually consider the merits of the case. Assuming the Court will need at least a few months to schedule argument and issue an opinion (and very reasonably may need more time), schools will endure prejudice and threats to their existence well into summer. The prejudice and risks to institutions weigh against any extension.

### III. The Government Has Shown No Diligence and its Explanation is Unpersuasive.

According to binding Fifth Circuit precedent, a movant seeking more time has the burden to establish that it acted diligently and that, notwithstanding those efforts, it cannot reasonably meet the deadline. *Sw. Bell*, 346 F.3d at 546; *see also Brewer v. Mbroh Eng'g, Inc.*, No. 3:22-cv-1861-K, 2024 WL 3818336, at *2-3 (N.D. Tex. Apr. 17, 2024). *Thirty-seven days* have elapsed since the plaintiffs filed their final briefs, yet the government fails to argue that any of its attorneys have been "diligent" in working on its reply brief. This alone requires denying the Motion. Furthermore, the government has had the briefing schedule for more than *six months*. *See* ECF 25. Its January 31 deadline is no surprise, and the other "unanticipated" events discussed in its Motion are not bases to move that deadline.

The government gives six explanations for seeking relief: (1) an extended briefing deadline

---

[4] https://studentaid.gov/data-center/school/hcm ("Schools may be placed on [heightened cash management] as a result of . . . concern around a school's financial responsibility.").

in another case; (2) the filing of timely opposition and reply briefs on the pending motions to strike; (3) a "hearing" that was moved from mid-December to mid-January that required an unstated amount of "out of town" travel to an undisclosed location; (4) the length of AACS Plaintiffs' consolidated opposition and reply brief; (5) Ms. Wyer is "the only line attorney assigned to this case"; and (6) the filing of an *amicus* brief. These excuses do not support relief.

**Moved briefing deadline:** With respect to counsel's January 17, 2025 brief deadline, AACS Plaintiffs sympathize with opposing counsel for whatever personal matter arose.[5] Nevertheless, the fact that a single briefing deadline was moved from December 23, 2024 to January 17, 2025 should be given no weight. There is no argument or proof that this single brief was so complex, lengthy, or difficult that it should justify a 31-day extension (or any extension at all). Moreover, AACS Plaintiffs and Ogle Plaintiffs filed their consolidated opposition and reply briefs on December 20, 2024. Thus, whether the "briefing deadline" in the other case was on December 23 or January 17, it still fell on a date when the clock on the government's reply deadline in this case was ticking. In other words, it would have cut into counsel's time anyway. Despite having the burden, the government does not argue that the December 23 deadline was unexpected, nor is there any indication of how long that deadline had been on the calendar.

**Motion to Strike briefs:** That the government filed a timely opposition to AACS Plaintiffs' motion to strike and a timely reply in support of its own motion to strike is no reason to extend its time to file its last reply brief. The government *chose* to file its (baseless) motion to strike. It should not get credit for adding to its own workload, and it was obviously foreseeable that it would want to file a reply brief in support of that motion. With respect to its opposition to

---

[5] The government's motion mentions a "personal emergency." AACS Plaintiffs certainly do not challenge the veracity of its counsel's statement and wish her well, but note that no "emergency" was mentioned when the government sought AACS Plaintiffs' consent to this Motion.

AACS Plaintiffs' motion to strike, the government *chose* to include with its motion to strike an unnecessary "expert" declaration littered with *post-hoc* justifications for its Final Rule; *see also* ECF 65 at 2, 7-8 (explaining that no "expert" opinion is warranted or admissible for the purely legal issue of whether to strike AACS Plaintiffs' declaration).  The government's opposition and reply briefs were self-imposed make-work that do not represent "good cause" for extending a deadline by a full month.

**Rescheduled "out of town" hearing.**  A single hearing does not warrant a 31-day extension.  Once again, despite having the burden, the government says nothing about how complex the hearing was (a mere status conference or a complicated appellate argument)[6], how long counsel was "out of town," or how far she had to travel.  Moreover, the government does not explain what its lawyers were doing on all the days on which the hearing had previously been set—time that could have been dedicated to briefing for this case.

**The length of AACS Plaintiffs' last brief.**  The length of AACS Plaintiffs' last brief is the product of the schedule that the government insisted upon.  When negotiating the schedule for this case, AACS Plaintiffs advocated a standard summary judgment schedule, whereby it would file an opening brief and reply brief consistent with the page limitations in the Local Rules, and the government would file only an opposition brief (since the government is effectively doing nothing more than opposing AACS Plaintiffs' motion for summary judgment).  ECF 14. AACS Plaintiffs' proposed schedule also gave the government the option to cross-file for summary judgment on the same date that AACS Plaintiffs would file their motion for summary judgment. *Id*.  The briefing schedule for the government's cross-motion (if filed) would have matched the

---

[6] The fact the hearing was rescheduled four times in as many weeks implies that it did not regard a matter requiring days or weeks of preparation.

schedule for AACS Plaintiffs' motion. Had the government agreed to this reasonable proposal, it would already be done briefing this case and the matter would be ripe for decision.

But, the government did not agree. When the government instead got the schedule it demanded, it knew or should have known from the Local Rules that the plaintiffs might file briefs up to 75 pages long and that it would have only 41 days to prepare its reply. *See* Local R. 56.5(b).

**The government's staffing of this matter.** The Federal Programs Branch of the Department of Justice's ("DOJ") Civil Division "is headed by three directors, who oversee a staff of approximately 110 attorneys . . . ." Within that cohort, there are "two deputy directors and twelve assistant directors." Attorneys within the division "are expected to, and typically maintain, case docket<u>s</u> across [up to 12] litigation areas."[7] Yet, the government offers no explanation why Ms. Wyer "is the only line attorney assigned to this case" or why it could not assign co-counsel (or ask a lawyer with the Department of Education) to assist. Whatever its reason (if any), the government offers no argument why the DOJ's staffing choices are relevant to the four factors this Court considers, particularly when (as discussed above) those choices will prejudice AACS members and other schools. Furthermore, Ms. Wyer was presumably the "only line attorney" when the government agreed to this case's briefing schedule. Nothing has changed.

***Amicus* brief.** As is clear from the face of the *amicus* brief (ECF 56), *amici* focus on arguments made against the Department in another case. The Department has already considered their points, responded, and lost in that case. Other arguments of *amici* mirror what AACS Plaintiffs have argued. There is little, if anything, new in the *amicus* brief.

**The government still had/has plenty of time.** Finally, even taking the government at its word on every point, its argument still is weak. The last event it cites to justify an extension

---

[7] https://www.justice.gov/civil/federal-programs-branch (emphasis and modification added)

occurred on January 17, 2025. That *still* left two full weeks to prepare a reply brief. It is not unreasonable to expect the government to complete a single reply brief of no more than 50 pages in two weeks. All told, this factor weighs heavily against granting an extension.

### IV. The Government Fails to Argue the Importance of the Desired Extension.

The government completely fails to address one of the factors that this Court considers: "the importance of the extension to the moving party." *Charter Sch. Sols.*, 333 F.R.D. at 100. A party's "failure to brief an argument in the district court waives that argument in that court." *Haggins v. Deep Ellum Found.*, No. 3:24-cv-00150-E, 2024 WL 1641240, at *3 n.3 (N.D. Tex. Apr. 16, 2024) (citation omitted); *see also Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007) (issues "inadequately briefed [are] therefore waived where the party failed to provide 'any legal argument beyond bare assertions.'"). Furthermore, in accordance with the briefing schedule *that the government demanded*, it has already filed the equivalent of two briefs (which were consolidated into one 80-page filing): a brief in support of its cross-motion for summary judgment, and a brief in opposition to plaintiffs' motions for summary judgment. It has already had an opportunity to state its affirmative grounds for judgment (if any) and to oppose plaintiffs' arguments. It is not as if the government can raise new grounds for judgment in its reply brief. *See 1901 Gateway Holdings, LLC v. CentiMark Corp.*, No. 3:21-cv-2607-BN, 2024 WL 665701, at *9 (N.D. Tex. Feb. 16, 2024) (quoting *Blundell v. Lassiter*, No. 3:17-cv-1990-L-BN, 2018 WL 6738046, at *14 (N.D. Tex. May 21, 2018)) ("A court generally will not consider arguments raised for the first time in a reply brief."). This factor weighs against an extension.

### V. No Continuance Can Cure the Prejudice.

There will be no trial in this case, so a continuance cannot cure any prejudice. AACS Plaintiffs note that, when conferring with the government regarding this motion, AACS Plaintiffs indicated that a written assurance from the Department or agreed order for an injunction would

mitigate the prejudice to schools. The government rejected AACS Plaintiffs' suggestion.

## VI. The Change in Administration is Immaterial to the Government's Motion.

The government offers one last excuse for seeking more time: the changeover to the Trump administration. The Court should reject this argument out of hand for two reasons. First, the government surely appreciated that a new administration might take over when it agreed to the briefing schedule in July 2024. The government does not explain why it was amenable to the current case schedule *then* but is no longer amenable *now*. Second, no decision of the new administration can bolster the Department's ability to defend the Final Rule. One of two things will happen: either the new administration will elect to defend the Final Rule (in which case, defense counsel will file a reply as originally planned), or the new administration will choose to abandon the Department's defense of the Final Rule (in which case, it will not matter how much time defense counsel had to prepare the government's final brief). New leadership within the Department warrants no consideration by the Court.

## VII. Any Relief Should Be Limited.

AACS Plaintiffs oppose any extension. But, to the extent the Court elects to grant the government more time, the government has not justified a 31-day extension. The government should get no more than an additional week (to February 7, 2025).

Dated: January 27, 2025

Respectfully submitted,

    /s/ Drew T. Dorner
John M. Simpson (admitted *pro hac vice*)
Drew T. Dorner
Duane Morris LLP
901 New York Avenue NW, Suite 700 East
Washington, D.C. 20001-4795
Telephone: +1 202 776 7800
Fax: +1 202 776 7801
JMSimpson@duanemorris.com
DTDorner@duanemorris.com

>Joakim G. Soederbaum (Texas Bar No. 24091338)
>Duane Morris LLP
>777 Main Street, Suite 2790
>Fort Worth, TX 76102
>Telephone:  +1 817 704 1000
>Fax:  +1 817 704 1001
>JSoederbaum@duanemorris.com
>
>Edward M. Cramp (admitted *pro hac vice*)
>Duane Morris LLP
>750 B Street, Suite 2900
>San Diego, CA 92101-4681
>Telephone: +1 619 744 2200
>Fax: +1 619 744 2201
>EMCramp@duanemorris.com
>
>*Attorneys for Plaintiffs*
>*American Association of Cosmetology Schools and*
>*DuVall's School of Cosmetology, L.L.C.*